LABORDE, Judge.
Defendant, Arthur C. Spikes, was charged with four (4) counts of aggravated rape in violation of LSA-R.S. 14:42, and one (1) count of aggravated burglary in violation of LSA-R.S. 14:60. On July 20, 1982, a jury found defendant guilty on all counts. On each of the four (4) counts of aggravated rape, defendant was sentenced to serve at hard labor for the rest of his natural life. On the aggravated burglary charge, defendant was sentenced to serve at hard labor for twenty (20) years. The sentences are to run concurrently. Defendant relies on three assignments of error, which will be combined into one argument.
FACTS
The incident from which these charges arose occurred on December 22, 1981, shortly after 11:00 p.m. On the evening in question, Mrs. Louise Braud testified that she retired for the night at about 9:00 p.m. at her home in Boyce, Louisiana. Around 11:00 p.m., Mrs. Braud was awakened by a noise and saw a black man in her bedroom. Once inside the house, the assailant attacked Mrs. Braud. The black man tore off her nightgown and proceeded to beat her around the hands, face, neck and body. The man then proceeded to rape the victim at least four (4) times. The attack lasted approximately one hour.
The victim immediately called the Boyce Police Department and reported the incident. The officers discovered the cap and jacket of the assailant and also the blood stained sheet and pillow case. After observing Mrs. Braud’s condition the officers requested she be transferred to St. Francis Cabrini Hospital. The subsequent day Ms. Hortense Beebe, the victim’s sister, discovered her sister’s torn panties and a patch of hair. This additional evidence was brought to the sheriff’s department for analysis. Mrs. Braud remained hospitalized for several days. While there she made an out-of-court photographic identification of her assailant, Arthur Spikes.
*1219 ASSIGNMENT OF ERROR NOS. 1, 2 AND 3
Defendant contends that there was insufficient evidence to support his conviction for these crimes. Defendant maintains that the State did not prove that he committed aggravated rape and/or burglary beyond a reasonable doubt.
A convicted appellant’s attack upon the sufficiency of State’s evidence to prove his guilt is judged by determining whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found every essential element of the crime proved beyond a reasonable doubt, (emphasis added). Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Long, 408 So.2d 1221 (La.1982); State v. Fuller, 418 So.2d 591 (La.1982). The question that must be answered is whether there was sufficient evidence presented for every essential element of the crime.
The crime of aggravated burglary (LSA-R.S. 14:60) is stated below in part:
§ 60. Aggravated burglary
“Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender, ...
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
Whoever commits the crime of aggravated burglary shall be imprisoned at hard labor for not less than one nor more than thirty years.”
In order to prove the crime of aggravated burglary in this ease, the State was required to prove beyond a reasonable doubt that the defendant made an unauthorized entry of an inhabited dwelling with the intent to commit a theft or a felony and committed a battery upon a person while in such place. The breaking and entering through a locked window of Mrs. Braud’s home in the middle of the night, presumes an unauthorized entry. In our view, there was sufficient evidence to establish that the perpetrator did severely beat the victim and then stole approximately twenty ($20.00) dollars from her purse. The State did prove beyond a reasonable doubt that an aggravated burglary occurred.
Turning now to the crime of aggravated rape, the elements of the crime are as stated below, in part:
§ 42. Aggravated rape
“Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) Where the victim resists the act to the utmost, but whose resistance is overcome by force; or”
In determining if the State has met its burden in proving aggravated rape beyond a reasonable doubt, we must look at each element of the crime of aggravated rape. First, it must be proven that the defendant committed an act of sexual intercourse with the victim without the lawful consent of the victim. In order to decide this issue, the court must consider LSA-R.S. 14:41 Rape:
§ 41. Rape; defined
“Rape is the act of anal or vaginal sexual intercourse with a male or female person who is not the spouse of the offender, committed without the person’s lawful consent.
Emission is not necessary; and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime.
For the purposes of this Chapter, a person shall not be considered to be a spouse if a judgment of separation from bed and board has been rendered. Acts 1978, No. 239, § 1.”
Defendant alleges that there was no “sexual penetration”. In order for this Court to uphold the conviction, the State must have established that there were four (4) penetrations. In State v. Carter, 362 So.2d 510 (La.1978), the testimony of the *1220 victims as to the commission of each (emphasis added) offense was sufficient to sustain the conviction. In State v. Prestridge, 399 So.2d 564 (La.1981), the testimony of a ten (10) year old rape victim and her description of the physical contact between defendant and herself was sufficient to support a finding of sexual penetration. The court stated that the word “sexual penetration”, should have a common sense meaning, not a legal or technical definition.
Mrs. Louise Braud, the victim, testified on direct and cross examination that she was penetrated four (4) times. The testimony of Ms. Petrie, the nurse at St. Francis Cabrini Hospital, substantiated the victim’s assertion that she was sexually penetrated. Ms. Petrie, who has examined at least 150 rape victims indicated that based on the victim’s condition and her injuries, which include; bruises on the inside of the left thigh, abrasions or scrapes and bruising on the outside of her vagina on both sides, she concluded that the victim had been raped.
The defendant maintains that since seminal fluid was not discovered, the jury could not conclude beyond a reasonable doubt that there was a rape. The law specifically indicates that an emission is not necessary to constitute a rape. Even without any evidence of seminal fluid, the testimony of Ms. Petrie that seminal fluid is only found in about 25% of the rape victims examined and the testimony of the victim was sufficient proof to establish that a rape occurred.
To constitute the crime of aggravated rape it must be proven that the victim resisted the attack to the utmost. It should be noted that the victim is sixty-eight (68) years old. Mrs. Braud testified that she screamed and hollered and kept fighting to her last breath. The victim asserts that the perpetrator tried to smother her and that she bit his hand, pulled his hair and scratched his face. From the evidence ascertained, that of the medical prognosis, photographs, and the testimony of the victim it is apparent that a jury could infer that the victim did resist to the utmost.
The only remaining question is whether the defendant was, in fact, the individual who committed this offense. Under the Jackson, supra, approach the State is required to negate any reasonable possibility of misidentification in order to carry its burden of proof.
The victim identified defendant to be her assailant in an out-of-court photographic line-up and also in court. To determine the reliability of these identifications we must look at the facts and circumstances of the case. The victim maintains that the perpetrator was not wearing a disguise. She asserts that the room was well lighted and that she has good eyesight. The evidence indicates that the assailant was in the presence of the victim for approximately one hour. Immediately after the incident, the victim called the police and identified her assailant as a black male, in his 20’s, with a plaid shirt, dark pants, a jacket, a cap and light facial hair. The physical characteristics described match those of the defendant.
To corroborate the reliability of this description the State called the defendant’s brother, David Spikes. He testified that he owned a brown and orange jacket, but he maintains that his brother Arthur, the defendant, was wearing it on December 22, 1981.[1] The witness was able to identify the jacket and cap found at Mrs. Braud’s home to be those that defendant was wearing on the night in question.
Officer Wright and Chief Hawn were also called to identify the jacket and cap. Both officers stated that these items were found at the scene of the crime. They were both asked if they had ever seen either object previously and they both testified that the defendant was seen wearing them 3-4 days prior to this incident. The defendant rebuts this testimony, and states: “I don’t know who owns that jacket”.
*1221 Defendant’s brother also testified that the defendant, Arthur C. Spikes, left their mother’s home at approximately 10:30 p.m. on the night of the alleged rape. The evidence indicates that Mrs. Braud lives approximately 100 yards from the Spikes’ home. Defendant himself does not deny that he left at approximately this time, but insists that he returned at 11:05 p.m., he states:
“Q. How long were you gone?
A. I was gone about thirty-five (35) minutes.
Q. What time was this?
A. It was about 10:30 when I left.
Q. What time did you get back home?
A. It was about five after 12:00.
Q. 5 after 12:00 or 11:00?
A. After 11:00 I meant to say.”
Defendant does not indicate in his testimony where he went for the 35 minute interval. It seems apparent from the testimony that, in fact, he is not sure if he arrived home at 11:05 p.m. or 12:05 p.m. This testimony is significant in that Mrs. Braud called police headquarters at approximately 12:05 p.m. to report the rape.
The medical evidence did not exclude defendant as the perpetrator. Mr. Wojtkiew-icz, of the Northwest Louisiana Crime Lab., testified as follows:
“The hair that were identified as coming from the scene possess sufficient microscopic characteristics to match those that were from the head of Arthur Spikes, and they could have come from him.” (emphasis added)
He also maintains that the blood splotches could either be from the victim or the defendant, they could not be differentiated.
Other identifying marks were found on the defendant when he was apprehended. The officers noticed that there were scratch marks on his arm and an injury to one of his hands. This corroborates the testimony of Mrs. Braud that she scratched the assailant and bit him on the hand. Defendant negates this testimony and asserts that he was harassed and beaten by the police officers. Deputy Larry Nells testified on behalf of the defendant. He stated that there was a commotion at the booking desk, but on cross examination he stated that this was not uncommon and that he did not notice any physical contact.
In our view, the State has negated any reasonable possibility of misidentification. Where there is conflicting testimony, as in the instant case, as to the factual matter, the question of credibility of witnesses is within the sound discretion of the trier of fact. State v. Klar, 400 So.2d 610 (La.1981).
The jury obviously chose not to believe the defendant’s version of the incident. A jury’s choice not to believe a defendant should not be upset by our court on the basis that conflicting versions constitute insufficient evidence. The jury, after hearing the testimony and reviewing the evidence, concluded that every element of the crimes had been proved beyond a reasonable doubt.
For the foregoing reasons, the conviction and sentence of defendant, Arthur C. Spikes, are affirmed.
AFFIRMED.

. The victim was asked, out of the presence of the jury, whether David Spikes was her assailant and she answered in the negative.